IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CAESAREA DEVELLE JAMES, JR.,**

    Petitioner,

v.                                                       Civil Action No. 2:14cv42
                                                          (Judge Bailey)

**ANNE MARY CARTER, Warden,**

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On June 2, 2014 the *pro se* petitioner, Caesarea Develle James, Jr. (hereinafter "petitioner"), filed an Application for Habeas Corpus pursuant to 28 U.S.C. § 2241 along with an Emergency Motion for Preliminary Injunction, a Proposed Order to Show Cause, and a Financial Affidavit in support of his request to proceed as a pauper. (Dkt.# 1, 2, 3, and 4). The Clerk of Court issued a Notice of Deficient Pleading, advising the petitioner to correct certain deficiencies with his pleadings within twenty-one days, or by June 23, 2014. On June 30, 2014, having received no response to the deficiency notice, a Show Cause Order was entered, directing the petitioner to show cause within fourteen days why his case should not be dismissed for failure to prosecute. On July 7, 2014, petitioner filed his court-approved form, a response to the show cause order, and paid the filing fee.

Petitioner is a federal inmate housed at FCI Morgantown, and is challenging the validity of his convictions and sentences imposed in the United States District Court for the Southern District of Ohio. This matter is pending before the undersigned for an initial review and Report and Recommendation ("R&R").

## II. <u>Facts</u>[1]

In In the fall of 2006, James signed contracts to purchase a house in Clarkston, Michigan for $650,000 (the "Michigan Property") and a second house in Springboro, Ohio for $715,000 (the "Ohio Property"). To obtain financing for the Ohio property, James secured two mortgage loans from a lender called Guaranteed Rate, Inc. ("Guaranteed Rate"), and the residence in Michigan with loans obtained from WMC Mortgage Corp.[2] To obtain financing from both lenders for the residences, James provided them with false representations of his income, employment, liabilities, and occupancy, as well as a copy of a federal tax return for 2005 in which he represented substantial income.[3] The tax return was "in stark contrast to a car loan application that James had submitted four months earlier, where he claimed a much more modest income."[4] He did not disclose to either lender that he had entered contracts for two properties at the same time, and he also failed to disclose that he entered into a side agreement with the seller of the Ohio property, whereby the seller secretly paid $100,000 back to James outside of the closing. James "defaulted on both mortgages almost immediately."[5] In an effort to delay the foreclosure proceedings against the houses, James filed two different bankruptcy petitions in the Southern District of Ohio – one in 2007 and one in 2009. Eventually, the bankruptcy stay was lifted and the foreclosure proceeded against the Ohio Property. James then tried to thwart the

---

[1] The facts are taken from Petitioner's Criminal Docket for Case No. 1:09cr202 in the Southern District of Ohio, available on PACER, and the Sixth Circuit Court of Appeal's opinion on his direct appeal.

[2] <u>United States v. James</u>, 496 F. App'x 541, 543 (6th Cir. 2012).

[3] <u>Id</u>.

[4] <u>Id</u>. at 543 – 44.

[5] <u>Id</u>.

process by purchasing the Ohio Property back at the Sheriff's Sale.[6] James bid against the lender for the property and won the auction. He then presented a fake company check for the 10% down payment, which quickly bounced.

Shortly thereafter, the FBI conducted an investigation and concluded that petitioner had submitted fraudulent documents to support his loan applications for the two residences.[7] On December 16, 2009, he was indicted in the United States District Court for the Southern District of Ohio on charges of wire fraud, mail fraud, and passing a fictitious obligation.[8] Subsequently, on April 21, 2010, he was charged in a superseding indictment with a fourth charge of making false oaths during a bankruptcy proceeding.[9] On October 6, 2010, a second superseding indictment was filed, in order to clarify wording and cure certain flaws in the superseding indictment before trial.[10]

Prior to trial, despite being represented by counsel, petitioner filed an 87-page *pro se* Motion to Dismiss the Superseding Indictment,[11] arguing that Guaranteed Rate and WMC Mortgage were not the owners of the notes or mortgages; that the lenders falsified his signatures; that the lenders did not have an office in Ohio; the notarized signatures violated state law; and that the lenders were not the actual holders of the loans.[12] By Order entered on September 21, 2010, the motion was denied.[13]

---

[6] S.D. Ohio 1:09cr202, Dkt.# 115 2-36 and 2-42.

[7] Id. at 544.

[8] Id.

[9] Id. James was charged with making a false statement in bankruptcy because he claimed that he had no bankruptcies, when in fact, he had filed for bankruptcy 4 times over a 6-year period.

[10] S.D. Ohio 1:09cr202, Dkt.# 45. See also: S.D. Ohio, 1:09cr2002 Dkt.# 3.

[11] With its voluminous attachments, the motion encompassed 376 pages.

[12] S.D. Ohio 1:09cr202, Dkt.# 33.

After two trials,[14] James was convicted of making false statements in bankruptcy, wire fraud, and mail fraud, in violation of 18 USC §§1343 and 2; 1341 and 2; and 152(3).[15]

On May 27, 2011, James was sentenced to 51 months' imprisonment on each of the three counts, to run concurrently, and 3 years' supervised release on each count, to run concurrently.[16] He was also directed to pay a total of $300 in Special Assessments, and restitution in the amount of $262,644.34 to Guaranteed Rate and in the amount of $192,667.25 to WMC Mortgage Group.[17]

On June 30, 2011, through counsel, petitioner filed a notice of appeal to the Sixth Circuit Court of Appeals and a motion for bond pending appeal in the sentencing court. On appeal, petitioner raised five issues:

    1) whether the district court's denial of James's proposed jury instruction deprived him of his constitutional right to present a defense.

    2) The district court erred in conducting a joint trial on wire fraud, mail fraud, and fictitious instrument charges.

    3) The evidence of "other wrongs" was improperly admitted by the district court.

    4) The district court's obstruction of justice sentencing enhancement based on his filing of fraudulent documents with the IRS was inapplicable.

---

[13] S.D. Ohio 1:09cr202, Dkt.# 39.

[14] To prevent any possible prejudice that might occur by trying all four counts together, James was first tried on Court Four of the second superseding indictment. On November 4, 2010, after a two-day trial, he was convicted of making false statements in bankruptcy. James then proceeded to a second trial several weeks later, on the wire fraud, mail fraud, and passing a fictitious obligation charges. After a five-day trial, on December 6, 2010, he was convicted of Counts One and Two of the second superseding indictment, but the jury was unable to reach a verdict on Count Three of the superseding indictment, the fictitious instrument charge. The district court later dismissed Count Three.

[15] James, 496 F. App'x. at 544.

[16] S.D. Ohio, 1:09cr202, Dkt.# 101.

[17] S.D. Ohio, 1:09cr202, Dkt.# 100.

5) The evidence on the making false statements in bankruptcy charge was insufficient to convict.

The district court denied petitioner's June 30, 2011 motion for bond on July 8, 2011.[18] Through counsel, James appealed the district court's decision to the Sixth Circuit Court of Appeals. By Order entered September 13, 2011, the Sixth Circuit affirmed the district court's decision denying bond during the pendency of petitioner's appeal.[19]

On July 19, 2011, James filed a *pro se* motion for bond pending appeal in the sentencing court; it was denied by Order entered August 1, 2011.[20]

Petitioner filed a *pro se* Motion for Immediate Reconsideration for Bond Pending Appeal with Rebuttal of Flight Risk and Evidences in the sentencing court on January 5, 2012.[21]

On August 23, 2012, the United States Court of Appeals for the Sixth Circuit affirmed his convictions and sentence.[22]

On July 19, 2011, while his appeal was still pending, petitioner filed a motion to vacate pursuant to 28 U.S.C. § 2255. On September 4, 2012, petitioner filed a Motion for Leave to File Supplemental Motion to Vacate under 28 U.S.C. §2255 and a Motion for Immediate Consideration of Motion for Bond Pending Decision of Supplemental Motion for 2255. Petitioner's §2255 motion and supplemental motion assert that

1) the indictment was defective because

    (a) the element of materiality was not described within the wire fraud and mail fraud counts;

---

[18] S.D. Ohio, 1:09cr202, Dkt.# 107.

[19] S.D. Ohio, 1:09cr202, Dkt.# 124.

[20] S.D. Ohio, 1:09cr202, Dkt.# 114.

[21] S.D. Ohio, 1:09cr202, Dkt.# 126.

[22] James, 496 F. App'x. at 543, 550.

5

(b) the indictment was duplicitous; and

(c) the indictment did not properly identify the alleged victim.

2) The government committed <u>Brady</u> violations by suppressing evidence exculpatory to petitioner, including:

(a) the failure of one of the victim-lenders, WMC Mortgage Corp., to properly notarize a signature in <u>Logan v. WMC Mortgage Corp</u>. (In re: Gray), 410 B.R. 270 (6th Cir. 2009);

(b) Guaranteed Rate Inc. was found guilty of conspiracy to commit mortgage fraud in an Illinois court in 2010;

(c) WMC Mortgage and Guaranteed Rate violated Ohio law because they did not possess a broker's license or office in Ohio;

(d) the mortgages obtained by the Defendant were financed by a mortgage-backed security pool agreement with insurance for loss and fraud; and

(e) WMC Mortgage and Guaranteed Rate were not the real lenders and did not suffer any real losses.

3) The Lenders Committed Perjury or Forged Documents.

4) Petitioner did not make false statements in Bankruptcy.

5) The "telex" records of the bank transactions used at trial are inadmissible as hearsay.

On October 12, 2012, the government filed its response. As of the date of this R&R, the sentencing court has not yet ruled on petitioner's §2255 motion.

On October 19, 2012, petitioner filed a Motion for Immediate Consideration for Immediate Release from Prison, Set Aside Conviction, Reverse Sentence Due [sic] the Admissions by Government and Their Witnesses Rule 58 and Rule 5(a), Civil Rule 8(1), (A)(B)(2), (3), (4)(6)[sic].[23]

---

[23] S.D. Ohio, 1:09cr202, Dkt.# 138.

On April 29, 2013, petitioner filed a Notice of Appeal, seeking to appeal the July 8, 2011 order denying his motion for bond pending appeal.[24]

On May 13, 2013, petitioner filed an Emergency Notice of Appeal of Detention Order, attempting to appeal again from the June 21, 2011 judgment of conviction, along with a motion for bail pending appeal in the Sixth Circuit Court of Appeals.[25] On June 11, 2013, in one Order, the Sixth Circuit dismissed both the April 29, 2013 and the May 13, 2013 appeals for lack of jurisdiction, because they were not only untimely, but also because James was seeking to pursue an impermissible second direct criminal appeal.[26] It also denied his pending motion for bail pending appeal as moot. James sought rehearing, and on July 8, 2013, James' petition for rehearing denied was denied.

By Order entered on June 11, 2013, the district court denied petitioner's January 5, 2012 motion for bond; his September 4, 2012 motion for immediate consideration of motion for bond pending the decision on his §2255 motion; and his October 19, 2012, Motion for Immediate Consideration for Immediate Release from Prison, Set Aside Conviction, Reverse Sentence Due [sic] the Admissions by Government and Their Witnesses Rule 58 and Rule 5(a), Civil Rule 8(1), (A)(B)(2), (3), (4)(6)[sic], along with several other motions.[27] Petitioner appealed. On February 26, 2014, the Sixth Circuit entered an Order affirming the district court's Order denying petitioner's release on bond pending a decision in his §2255 motion.[28]

### III. Analysis

---

[24] S.D. Ohio, 1:09cr202, Dkt.# 144.

[25] (6th Cir. Dkt.# 1)(13-3602).

[26] (6th Cir. Dkt.# 23)(13-3602).

[27] S.D. Ohio, 1:09cr202, Dkt.# 146.

[28] S.D. Ohio, 1:09cr202, Dkt.# 152.

The primary means of collaterally attacking a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255. A § 2241 petition is used to attack the manner in which a sentence is executed. Thus, a § 2241 petition that challenges a federal conviction and sentence is properly construed to be a § 2255 motion. The only exception to this conclusion is where a §2241 petition attacking a federal conviction and sentence is entertained because the petitioner can satisfy the requirements of the "savings clause" in § 2255. Section 2255 states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

28 U.S.C. § 2255 (emphasis added).

The law is clearly developed, however, that merely because relief has become unavailable under § 2255 because of a limitation bar,[29] the prohibition against successive petitions, or a procedural bar due to failure to raise the issue on direct appeal, does not demonstrate that the § 2255 remedy is inadequate of ineffective. In re Vial, 115 F. 3d 1192, 1194 (4th Cir. 1997). Moreover, in Jones, the Fourth Circuit held that:

> § 2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct

---

[29] In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. § 2255.
    The limitation period shall run from the last of:
    a. The date on which the judgment of conviction becomes final;
    b. The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
    c. The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    d. The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gate-keeping provisions of §2255 because the new rule is not one of constitutional law.[30]

In Re Jones, 226 F.3d 328, 333-334 (4th Cir. 2000).

In his rambling, 40-page type-written petition[31] pending before this Court, petitioner raises a Fed. R. Civ. Pro. 60(b) claim, asserting that he is being unlawfully detained and restrained as a result of a judgment that was obtained through a fraud upon the court, perpetrated by the United States Attorneys who tried his case(s) and the fabricated evidence they presented through their chief witness. He also claims he has mental illness that causes a cognitive disorder, that precludes his ability to appreciate the wrongfulness of any act he was charged with or convicted of, in addition to its precluding the possibility of his having had any *mens rea* to commit the charged crimes. For relief, petitioner asks the court to vacate his judgment of conviction, his sentence, and the "order of fine [sic] and restitutions."[32]

In order to raise his claims under § 2241, petitioner must first establish that he is entitled to review under § 2241 by meeting the Jones requirements.[33] Although petitioner has not raised

---

[30] The "gatekeeping" requirements provide that an individual may only file a second or successive §2255 motion if the claim sought to be raised presents:
(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense; or
(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255; see Jones, 226 F.3d at 330.

[31] Petitioner's entire petition, including its attachments, totals 89 pages. Although he was directed to, and did file a court-approved form petition, he merely filled out the first 3 pages of the form petition and then wrote "refer to record of petition on file" for every other entry on the form. See Dkt.# 12.

[32] Dkt.# 1 at 39.

[33] See Bousley v. United States, 523 U.S. 614, 623 (1998) (In order to "open the portal" to a §2241 proceeding, the petitioner must first show that he is entitled to the savings clause of § 2255. Once those narrow and stringent requirements are met, the petitioner must then demonstrate actual innocence. Actual innocence means factual innocence, not mere legal insufficiency.); see also Herrera v. Collins, 506 U.S. 390, 404 (1993) ("A claim of 'actual

9

the savings clause, it is clear that he does not meet its requirements. Even if he could satisfy the first and third requirements of Jones, he cannot satisfy the second element because the crimes for which he was convicted, violations of 18 USC §§1343 and 2, 1341 and 2, and 152(3) remain criminal offenses. Therefore, because Petitioner attacks the validity of his convictions and sentences, and fails to establish that he meets the Jones requirements, he has not demonstrated that § 2255 is an inadequate or ineffective remedy, and he has improperly filed a § 2241 petition.

Further, petitioner's Fed. R. Civ. Pro. 60(b) Motion for Relief argument is unavailing as well. Fed. R. Civ. Pro. 60(b) provides that a court may, upon motion or upon such terms as are just, relieve a party from a final judgment, order, or proceeding for one of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Subsection (6) of Rule 60(b) is a "catch-all" provision which permits relief for "any other reason that justifies relief." A Rule 60(b)(6) motion must be based upon some reason other than those stated in subsections (1)-(5) of Rule 60(b). 12-60 Moore's Federal Practice –- Civil § 60.48. Additionally, a Rule 60(b)(6) motion may not be granted absent "extraordinary circumstances." See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863-64 (1988).

A Rule 60(b) motion may also be construed as a motion for reconsideration. "[T]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present

---

innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); Royal v. Taylor, 188 F. 3d 239, 243 (4th Cir. 1999) (federal habeas relief corrects constitutional errors). Thus, a freestanding claim of actual innocence is not cognizable in federal habeas corpus and such claim should be dismissed.

newly discovered evidence . . . . Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." Harsco Corp. v. Zlotnicki, 779 F.2d 907, 909 (3rd Cir. 1985), cert. denied, 476 U.S. 1171 (1986).

However, a motion for reconsideration should not be used to reiterate arguments previously made or as a vehicle to present authorities available at the time of the first decision. See Above the Belt, 99 F.R.D. at 101. Rather, "a motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of due diligence." Prudential Securities, Inc. v. LaPlant, 151 F.R.D. 678, 679 (D. Kan. 1993).

Here, despite his 40-page petition, petitioner has provided no evidence of an intervening change in controlling law, or new evidence that was not available at trial. Further, the petitioner has not set forth any reason that would justify relief from judgment pursuant to Rule 60(b), let alone proved that any fraud was committed.

## IV. Recommendation

Based on the foregoing, the undersigned recommends the petition (Dkt.# 1) be **DENIED with prejudice**.

Further, the undersigned recommends that petitioner's pending Emergency Motion for Preliminary Injunction Supported by the Petition for Habeas Corpus (Dkt.# 2) be **DENIED as moot.**

**Within fourteen (14) days** after being served with a copy of this Recommendation, **or by October 15, 2014**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District

Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

DATED: October 1, 2014

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE